FIRST BAPTIST CHURCH OF BALD KNOB *v.* CENTRAL BAPTIST
CHURCH OF BALD KNOB.

Opinion delivered February 27, 1928.

1.  RELIGIOUS SOCIETIES—TITLE TO BUILDING.—Where two church congregations consolidated on agreement that one would worship in the house of the other, and that each would retain title to its building until a new joint edifice was erected, *held,* upon dissolution of the consolidated organization into its component parts, that the building used for worship had not become the property of the congregation which had left its old building, since no new structure had been erected at the time of its dissolution.

2.  RELIGIOUS SOCIETIES—EFFECT OF CONSOLIDATION AGREEMENT.—Where two churches consolidated under an agreement that, while they worshiped in one building, each would retain ownership of its own building until such time as a new edifice would be erected, *held,* on dissolution of the consolidation, that the organization which had remodeled and mortgaged its church for a residence was alone responsible for debts thereby incurred, no new edifice having been erected.

Appeal from White Chancery Court; *Frank H. Dodge,* Chancellor; affirmed.

·*John E. Miller* and *Culbert L. Pearce*, for appellant.
*Brundidge & Neelly*, for appellee.

McHANEY, J.   Prior to January 29, 1922, there were two Baptist churches in the town of Bald Knob, one, the First Baptist Church, being the Landmark Church, and the other, the Central Baptist Church, being the Missionary or Conventional Baptist Church.   On that date they were consolidated into one Landmark Baptist Church, one of the resolutions adopted on that date by the Central Baptist Church being as follows:

"That we, as a body, agree to go to Landmark, under the condition that you come and worship in the building of the Central Baptist Church, until such time as the united bodies agree and erect a new church.   We feel that we have gone more than half way in this offer, and that you should be willing to do this much for the uplifting of the Baptist cause in Bald Knob.

"Be it further resolved, that each church or body reserves the right to dispose of its church property until same is placed in a new church.

"J. T. Reed, moderator.

"Mrs. T. W. Leggett, church clerk."

After the consolidation, the consolidated body held its church services and meetings in the church-house of the Central Baptist Church. Some time after the consolidation the church-house of appellant was remodeled and converted into a residence, and, in order to obtain the money to make such improvements, they placed a mortgage upon this property in the sum of $1,350 to secure a note for borrowed money in such sum. The consolidated body continued to work together until the first Sunday in January, 1927, but with considerable discord for some months prior thereto, at which time the pastor announced that there would be a church meeting that afternoon, and that no one but Landmark Baptists would be permitted to vote at such meeting.   This meeting was held and a resolution adopted withdrawing fellowship from the appellees, the former members of the Central Baptist Church, the effect of which was to turn them out

of church. Thereafter appellees took charge of the Central Baptist Church property, excluded the Landmark Baptists from using same, and brought a suit to enjoin them from using the property or from interfering with their possession of said property. A temporary restraining order was granted, and, on a final hearing, the chancellor found that the Central Baptist Church and the trustees thereof were the owners of its church property, including the grounds and the building, and had the right to occupy, control and manage the same, free from any interference on the part of the appellants, and the temporary injunction theretofore granted was made perpetual. The chancellor further decreed a lien in favor of appellants against the piano belonging to the appellees in the sum of $63, which the appellants had paid on the purchase price thereof, and ordered the $270 then on hand and in bank to be divided equally between the parties. From this decree this appeal is prosecuted.

It is first contended by appellants that, by the act of consolidation on January 29, 1922, the property of the Central Baptist Church became the property of the consolidated bodies, under the name of the First Baptist Church, and that therefore the Central Baptist Church lost title to its property. But for the agreement between the bodies, as exemplified by the resolution adopted by the Central Baptist Church heretofore set out, that each body would retain title to its property until such time as same should be sold and put into a new church, appellants' contention would undoubtedly be true. We think the chancellor put the correct construction upon the act of consolidation and the resolution adopted in connection therewith, that is, that each body would retain the ownership and title to its separate property until such time as they separately might sell or dispose of same and invest it in a new church to be the property of the consolidated body. The resolution heretofore quoted specifically so says, and this resolution was accepted by the appellant church. No sale having been made by either body of its church property, it cannot be said that the church property of the Central Baptist Church became the property

of the consolidated church, known as the First Baptist Church. We therefore hold that the title to the church-house and lot belonging to the Central Baptist Church never did become the property of the consolidated body known as the First Baptist Church, or the Landmark Baptist Church.

It is next insisted that, if the court should hold that the title to the property of the Central Baptist Church did not pass by the consolidation, since the consolidated church remodeled its property, converting it into a residence for rental purposes, upon which a mortgage of $1,350 was placed, the membership of the Central Baptist Church should be chargeable with one-half the cost of such improvements. We cannot agree with this contention. That property belongs to the First Baptist Church, and it and its membership alone are responsible for such debts incurred against it, even though made and incurred with the knowledge, acquiescence, consent or active participation of some of the present members of the Central Baptist Church. The improved property is still its property, and the membership of the Central Baptist Church have no rights or interest therein. This mortgage was placed thereon by authority of the then membership of the First Baptist Church, and the membership still existing therein are the beneficial owners thereof. Being the owners of this property, the organization as it now stands is responsible alone for this debt. The action of the Landmark members in excluding the other part of their membership was tantamount to an assumption of this indebtedness. The First Baptist Church, being the owner of the property, entitled to receive all the rents and profits therefrom, is likewise liable for its debts. We do not understand just how a court of equity could hold the members who had been expelled from the church by the voluntary action of that church liable for the church's debts.

It is finally contended that the court erred in finding that the First Baptist Church had paid only $63 on a piano now in use at the Central Baptist Church, for

which a lien was fixed on said piano, and that the joint organizations have on deposit in the banks at Bald Knob the sum of $270 contributed by the congregations of both bodies, which it ordered divided equally between them, because, appellant says, there is no evidence to support such findings. There is evidence to show that a piano owned by the appellants was sold and the proceeds used to pay a balance due on the piano of appellees, and there is evidence in the record to show that, at the time of the separation, the joint body had money on deposit in the banks. Just how the court arrived at the exact amount of each item we are unable to tell, but, since appellant has not questioned the correctness of the amount, only that it is without evidence to support it, we overrule this contention. Appellants did not offer to show that these amounts were other and different from that found by the court.

We find no error, and the decree is affirmed.